JUDGE MARRERO

406340.

Milton Springut
Tal S. Benschar
SPRINGUT LAW P.C.
75 Rockefeller Plaza – 19th Floor
New York, New York 10019
(212) 813-1600

13 CV 5666

*Attorneys for Plaintiffs Audemars Piguet Holding S.A. and*
*Audemars Piguet (North America) Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

AUDEMARS PIGUET HOLDING S.A. and
AUDEMARS PIGUET (NORTH AMERICA) INC.,

                    Plaintiffs,

v.

TOMMY HILFIGER U.S.A., INC., TOMMY
HILFIGER LICENSING LLC, MOVADO GROUP,
INC., and JOHN DOES 1 to 10,

                    Defendants.

------------------------------------------------------------x

: **COMPLAINT**
:
:
:
: CIVIL ACTION
:
:
:
:
:
:

RECEIVED
AUG 1 3 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs complaining of defendants, allege as follows:

## THE PARTIES' WATCHES

 

406340.2
Milton Springut
Tal S. Benschar
SPRINGUT LAW PC
75 Rockefeller Plaza – 19th Floor
New York, New York 10019
(212) 813-1600

*Attorneys for Plaintiffs Audemars Piguet Holding S.A. and*
*Audemars Piguet (North America) Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AUDEMARS PIGUET HOLDING S.A. and        :
AUDEMARS PIGUET (NORTH AMERICA) INC.,  :        **COMPLAINT**
                                                                      :
                        Plaintiffs,                       :
v.                                                               :        CIVIL ACTION
                                                                      :
TOMMY HILFIGER U.S.A., INC., TOMMY       :
HILFIGER LICENSING LLC, MOVADO GROUP, :
INC., and JOHN DOES 1 to 10,                   :
                                                                      :
                        Defendants.                    :
-----------------------------------------------------------------x

Plaintiffs complaining of defendants, allege as follows:

**THE PARTIES' WATCHES**

 

## NATURE OF THE CASE

1.      This is a trade dress infringement case brought by plaintiffs under the Trademark

Act, New York General Business Law, and common law to remedy the blatant copying and

confusing use of its distinctive and registered watch design trade dress.  As detailed below,

plaintiffs have used their Royal Oak watch design for over forty years, and it is one of the most

recognizable watch designs in the world.  In connection with the 40th Anniversary of the design

of the Royal Oak watch by famous watch designer Gerald Genta, a leading fashion magazine

commented:

> [Genta's design] solution was so profound he managed to create
> one of the most instantly recognizable timepieces ever, with its
> famous octagonal bezel and eight prominent screw heads like a
> portal . . .

*GQ Magazine*, June 20, 2012 , article entitled "Audemars Piguet Royal Oak Turns 40."

Defendants have misappropriated this famous design by producing a very close imitation.

Despite repeated protests by plaintiffs, defendants continue to flood the market with their

inexpensive imitations, whose close design clearly suggests an intent to trade off plaintiffs'

goodwill.  Plaintiffs accordingly have no choice but to seek relief from the Court.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over the claims in this action arising

under the Trademark Act of 1946, as amended, relating to trademark and trade dress

infringement and false designations of origin and false descriptions pursuant to 15 U.S.C. § 1121

and 28 U.S.C. §§ 1331 and 1338.

3.      This Court has supplemental jurisdiction over the claims in this Complaint arising

under New York statutory and common law pursuant to 28 U.S.C. § 1367(a), because the state

law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts, and pursuant to 28 U.S.C. §1338.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

5.      Plaintiff Audemars Piguet Holding SA, is a société anonyme, legally organized under the laws of Switzerland, having its principal office at Route de France 16, CH-1348 Le Brassus, Switzerland ("AP Holding").

6.      Plaintiff Audemars Piguet (North America) Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal office and place of business at 135 East 57th Street, New York, New York 10022 ("AP North America").  Plaintiffs are collectively referenced herein as "Plaintiff" or "Audemars Piguet."

7.      Defendant Tommy Hilfiger U.S.A., Inc. is a Delaware corporation having its principal place of business at 601 West 26th Street, New York, NY 10001 ("Tommy Hilfiger USA"). Defendant Tommy Hilfiger USA is transacting and doing business in this judicial district and is subject to the personal jurisdiction of this Court.

8.      Defendant Tommy Hilfiger Licensing LLC is a Delaware limited liability company having its principal place of business at 601 West 26th Street, New York, NY 10001 ("Tommy Hilfiger Licensing").   Defendant Tommy Hilfiger Licensing is transacting and doing business in this judicial district and is subject to the personal jurisdiction of this Court.

9.      Defendant Movado Group, Inc. is a New York corporation, having an office and place of business at 650 From Road, Suite 375, Paramus, NJ 07652 ("Movado").  Defendant Movado is transacting and doing business in this judicial district and is subject to the personal jurisdiction of this Court.

3

10. Defendants John Does 1 to 10 are other entities affiliated with one or more of the named defendants, who are involved in the activities which form the basis of this Complaint.

11. All of the above defendants are collectively referenced herein as "Defendants."

## FACTS COMMON TO ALL COUNTS

### The AUDEMARS PIGUET Brand and Businesses

12. Plaintiff's origins date back to 1874, when Jules Louis Audemars met Edward Auguste Piguet, at Vallée de Joux, considered to be the cradle of prestige watch-making. When they graduated from school they went to Vallée de Joux to start working in their favorite field of watch manufacturing. In 1875, they founded a firm later known as Audemars, Piguet et Cie, the corporate predecessor of Plaintiff.

13. In the years that followed, Audemars Piguet became famous as a watch manufacturer and designer, world-renowned for its fine craftsmanship and watch designs. Audemars Piguet watches are considered among the finest in watch craftsmanship, and are sought after as luxury goods around the world, including in the United States.

14. AP Holding is the worldwide owner of all trademarks and trade dress concerning the watches manufactured under the Audemars Piguet brand, including the rights asserted herein. AP North America is the exclusive United States distributor and a licensee of those rights.

### The Royal Oak Watch

15. In 1972, Audemars Piguet introduced what it named the Royal Oak watch. It was the first high-end luxury sports watch entirely made of steel. Due to its specific and unique design, the Royal Oak became an instant hit, and in the subsequent 40 years has become one of

the most famous watch designs in the world.  Indeed, in December 2011, the *New York Times* listed it as one of only a few "truly classic watches" and a "timeless icon."

16.     The trade dress of the Royal Oak watch (the "ROYAL OAK Trade Dress") consists of a collocation of design elements.  The combination of all or almost all such elements together give the watches a distinct overall look and commercial impression.  Although these elements cannot be perfectly described in words, the following describes the elements of the ROYAL OAK Trade Dress:

(a)     the watch face is round and surrounded by an octagonal-shaped unitary bezel which features eight hexagonal-shaped screw heads positioned parallel to the curve of the bezel at each corner of the octagon;

(b)     the watch case is a unitary piece below the bezel and extending beyond the four corner sides (*i.e.*, NE, SE, SW and NW) of the bezel;

(c)     at the north and south ends of the bezel, the width of the case narrows slightly and slopes downwardly at both ends, giving the appearance of a plate extending across the width of the case and including two indentations on each end into which are inserted attachment studs which connect the case to a bracelet;

(d)     the attachment studs are rectangular with rounded ends;

(e)     the watch face is adorned with a "Grande Tapisserie" decorative pattern constituted by regularly spaced raised points covering the entire face;

(f)     the winding crown is a faceted hexagon.

<u>On models including a metal bracelet, the bracelet has the following distinctive design.</u>

(g)    the bracelet consists of connecting links which are trapezoid-shaped, having parallel sides on top and bottom and sloping sides that narrow the width of the bracelet as one moves away from the watch case;

(h)    the links have a pair of indentations on each parallel side into which are inserted small connecting studs which match the shape of the attachment studs and such indentations are aligned and arranged that all the small connecting studs together with the attachment studs form two lines of rectangular shaped plates.

17.    The ROYAL OAK Trade Dress (with and without the metal bracelet) is illustrated in the following sketches:

 

ROYAL OAK TRADE DRESS
<u>WITH BRACELET</u>

ROYAL OAK TRADE DRESS
<u>WITHOUT BRACELET</u>

6

18.     The collocation of features set forth in the above paragraph constitute a distinctive trade dress that has secondary meaning.

19.     The ROYAL OAK Trade Dress is registered on the Principal Register of the United States Patent and Trademark Office, Registrations Nos. 4,232,239 and 4,232,240 both issued on October 30, 2012.

20.     The ROYAL OAK Trade Dress has been extensively promoted by Audemars Piguet in the United States and throughout the world since 1972 and has achieved significant sales success.  The public has come to recognize this design as distinctive of this line of Audemars Piguet watches and as an indication of source of such watches.  The ROYAL OAK Trade Dress is thus a means by which Audemars Piguet is known to the public and the trade as the sole source and origin of Audemars Piguet Royal Oak watches.  Accordingly, the trade dress design has very strong consumer association with Audemars Piguet, and the mark is a very strong mark.

21.     The ROYAL OAK Trade Dress is not functional, as that term is used in trade dress law, for at least the following reasons:

(a)     The watch design elements listed above, when viewed in combination and in their totality, do not create any functional advantage for the watches, either in terms of time-keeping, ease of wear or any other utilitarian advantage.  Accordingly, the watch design claimed as a trade dress in no way affects the quality of the product.

(b)     There are hundreds, if not thousands, of alternative watch designs being marketed by numerous competitors of Plaintiff at numerous price points, including dozens of alternative designs being offered for sale on Defendants' own websites, none of which even remotely infringe upon the

7

claimed trade dress.  There is accordingly no competitive need to copy the ROYAL OAK Trade Dress.

(c)   Nothing about the claimed design elements makes a watch cheaper or easier to manufacture.

(d)   The design elements of the trade dress have never been the subject of any utility patent or application for a utility patent.

(e)   The design elements of the trade dress *have* been the subject of several issued design patents, in combination with other elements not claimed as part of the trade dress.

(f)   Plaintiff has never advertised the Royal Oak watch as having any particular utilitarian advantage as a function of the trade dress design. Although the watches are, of course, examples of superb watchmaking and craftsmanship, such is not a function of their design, and watches bearing other designs have likewise been manufactured by Audermars Piguet with the same fine craftsmanship.

(g)   The trade dress is now subject to two registrations, and it is thus presumed valid under 15 U.S.C. § 1057(b).


## The ROYAL OAK Bezel Registrations

22.   In addition to its extensive rights in the ROYAL OAK Trade Dress set forth above, Audemars Piguet is the owner of a federal registration for the design of the bezel and watch face portions of the Royal Oak design, U.S. Trademark Registration No. 2,866,069  for watches and other watch-related items (hereinafter the "ROYAL OAK Bezel and Watch Face Registration").  This registration is incontestable and serves as conclusive evidence of the

validity of the trademark and of Plaintiff's exclusive right to use the mark in connection with

watches.  The registered mark appears thus:



23.     Audemars Piguet is also  the owner of a federal registration for the design of the

bezel portion of the Royal Oak design, U.S. Trademark Registration No. 3,480,826 for watches

and other jewelry items (hereinafter the "ROYAL OAK Bezel Registration").  The registered

mark appears thus:



(hereinafter the "ROYAL OAK Bezel Mark").

24.     The above four referenced registrations are collectively referenced herein as the

"ROYAL OAK Registrations."  The ROYAL OAK Trade Dress and the configurations of the

ROYAL OAK Bezel and Watch Face Registration and the ROYAL OAK Bezel Registration are

all collectively referenced herein as the "ROYAL OAK WATCH CONFIGURATION

9

TRADEMARKS." Through the ROYAL OAK WATCH CONFIGURATION TRADEMARKS Plaintiff has acquired substantial goodwill among consumers in the United States.

## Relationship Of Defendants And Their Infringing Activities

25.     Defendants Tommy Hilfiger USA and Tommy Hilfiger Licensing are company affiliates both involved in the use and promotion of the Tommy Hilfiger brand for watches and related goods. Tommy Hilfiger Licensing is the owner of various trademarks incorporating the names HILFIGER and/or TOMMY HILFIGER, which it licenses to other companies, including its affiliate Tommy Hilfiger USA.  Among these marks is the mark HILFIGER for watches. Upon information and belief, Tommy Hilfiger USA is responsible for the sale and retail distribution of goods bearing these trademarks, including the watches at issue in this case.

26.     One or more of the John Doe defendants are company affiliates of Tommy Hilfiger USA and Tommy Hilfiger Licensing which advertise, market, distribute and sell products made under these Tommy Hilfiger trademarks, through an unknown arrangement with the named Tommy Hilfiger defendants.  Such efforts include, among other things, operating Tommy Hilfiger stores wherein the products at issue in this case are offered for sale and sold. Alternatively, one or more of the John Doe Defendants are company affiliates of Movado, and are involved in the advertising, marketing, distribution and sale of watch products manufactured by Movado.

27.     Defendant Movado is a manufacturer of watches.  Upon information and belief, Movado has licensed the HILFIGER trademark from Tommy Hilfiger Licensing and/or its corporate affiliates for a line of watches, named the Tommy Hilfiger Eton watch, which defendant Movado causes to be manufactured, then sells and distributes such watches.  These Tommy Hilfiger Eton watches copy and imitate the distinctive ROYAL OAK WATCH

CONFIGURATION TRADEMARKS and bear designs which are strikingly similar to the ROYAL OAK WATCH CONFIGURATION TRADEMARKS, and are herein accused of infringement (the "ACCUSED WATCHES").

28.     Pursuant to the above-described arrangements, Defendants have advertised, sold and offered for sale these ACCUSED WATCHES. Although the exact time period these watches were sold and offered for sale by Defendants is presently unknown, it is believed that Defendants have been offering these watches for sale in the United States since the early summer of 2013.

29.     The promotion, distribution, offer for sale and sale of such watches bearing the famous and distinct ROYAL OAK WATCH CONFIGURATION TRADEMARKS is likely to cause confusion, mistake or to deceive the consuming public into believing that such items originate from or are sponsored by or associated with Plaintiff, when such is not the case. Without limiting itself to any particular theory of confusion, Plaintiff avers that the greatest danger of consumer confusion in this case consists of (a) post-sale confusion and (b) confusion as to sponsorship. Because of the great commercial strength of the ROYAL OAK WATCH CONFIGURATION TRADEMARKS, the similarity of the overall design of the ACCUSED WATCHES, and the prominence and distinctiveness of the design in both Plaintiff's and Defendants' watches, there is a great likelihood that at least those who observe Defendants' watches being worn in a post-sale context will be confused by the great similarity in design into falsely believing that such watches are manufactured or sponsored by Plaintiff, whereas in fact the Defendants have never received permission from Plaintiff.

30.     In addition, given that licensing of rights is common in this industry, there is a high likelihood that observers of defendants' Tommy Hilfiger Eton Watch will believe that such is licensed by Audemars Piguet, or otherwise sponsored or associated with Plaintiff. The fact

that Defendants mark the ACCUSED WATCHES with the name HILFIGER and the Hilfiger logo does not dispel the confusion because such labels are small and not easily discerned, and because such does not dispel confusion as to sponsorship.

31.     No defendant in this action has sought or received a license from Audemars Piguet for any purpose whatsoever.

32.     The watches sold and offered for sale by Defendants are of inferior quality to genuine Audemars Piguet watches.

33.     Defendants, without Audemars Piguet's authorization, intentionally and knowingly have and continue to sell and offer for sale imitations of the ROYAL OAK WATCH CONFIGURATION TRADEMARKS, willfully infringing the rights of Audemars Piguet set forth herein.

34.     Defendants' willfulness and bad faith is evidenced by the fact that since April 2013, Audemars Piguet has repeatedly protested, in writing, the introduction and then sale of the ACCUSED WATCHES, yet the promotion and sale of these watches continues unabated.

35.     Given the extensive bad faith on the part of Defendants, there is every reason to believe that, absent court intervention, such exploitation of the famous Royal Oak design will continue with respect to Audemars Piguet's trade dress and the ROYAL OAK WATCH CONFIGURATION TRADEMARKS.


### COUNT I

### TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a) and common law)

36.     Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

37.     Defendants have reproduced, copied and imitated the ROYAL OAK Trade Dress, in designing the ACCUSED WATCHES in a manner that is confusingly similar to the distinctive trade dress of Audemars Piguet, and then offering for sale and selling them, *inter alia*, on their website and retail stores, to customers located throughout the United States.

38.     Defendants' adoption and use of the ROYAL OAK Trade Dress described hereinabove constitutes trade dress infringement and deliberate and willful violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.     Defendants' actions described hereinabove constitute trade dress infringement and unfair competition in violation of New York common law.

40.     The actions and conduct of Defendants complained of herein have damaged Audemars Piguet and will, unless restrained, further impair, if not destroy, the value of the ROYAL OAK Trade Dress and the goodwill associated therewith.

41.     Defendants' trade dress infringement has caused Audemars Piguet to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

42.     Defendants' trade dress infringement, unless enjoined by this Court, will continue to cause Audemars Piguet to sustain irreparable damage, loss and injury, for which Audemars Piguet has no adequate remedy at law.

## COUNT II

### REGISTERED TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1) and common law)

43.     Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

44.     Defendants have actual or constructive knowledge of the existence of the ROYAL OAK Registrations and marks registered therein.

45.     Defendants' manufacture, promotion, or sale of watches utilizing the distinctive configurations of the ROYAL OAK Registrations creates a likelihood of confusion such that the purchasing public is likely to believe that Defendants' watches are authentic Audemars Piguet Royal Oak Watches or are in some manner sponsored, approved or authorized by, or otherwise connected with Audemars Piguet, including, specifically, in the manner set forth hereinabove.

46.     Defendants' actions constitute willful and deliberate infringement of Audemars Piguet's ROYAL OAK Registrations in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Defendants' actions constitute registered trade dress infringement and unfair competition in violation of New York common law.

48.     The actions and conduct of Defendants have damaged Audemars Piguet and will, unless restrained, further impair, if not destroy, the value of the ROYAL OAK Bezel mark and the goodwill associated therewith, for which Audemars Piguet has no adequate remedy at law.


### COUNT III

### TRADE DRESS DILUTION
### (N.Y. Gen. Bus. L. 360-l)

49.     Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

50.     For the reasons set forth hereinabove, Plaintiff owns very strong trademark/trade dress rights in the ROYAL OAK WATCH CONFIGURATION TRADEMARKS, and such are strongly associated with Plaintiff as the sole source of watches bearing those designs.

51.     The use by Defendants of virtually identical designs in their ACCUSED WATCHES is likely to cause dilution by blurring of Plaintiff's rights in the ROYAL OAK WATCH CONFIGURATION TRADEMARKS, by gradually whittling away the significant selling power and value of such trademarks, because such designs will, over time, no longer be associated exclusively with Plaintiff.

52.     Accordingly, Defendants sales and offers for sales of the ACCUSED WATCHES constitutes trademark dilution in violation of N.Y. Gen Bus. L. 360-l.

53.     Defendants' trademark dilution has caused Audemars Piguet to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

54.     Defendants' trademark dilution, unless enjoined by this Court, will continue to cause Audemars Piguet to sustain irreparable damage, loss and injury, for which Audemars Piguet has no adequate remedy at law.


**WHEREFORE**, Plaintiff demands:

1.     That Defendants, their officers, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be enjoined and restrained:

(a)     From imitating, copying, reproducing, using in any manner the ROYAL OAK Trade Dress or the configurations of the ROYAL OAK Registrations;

(b)     From representing, suggesting in any fashion to any third party, or performing any act which may give rise to the belief that Defendants, or any of their goods, are authorized or sponsored by Audemars Piguet;

(c)     From passing off, inducing or enabling others to sell or pass off any goods as products produced by Plaintiff which are not in fact genuine Audemars

15

Piguet goods, or not produced under the control and supervision of Audemars Piguet and approved by Audemars Piguet;

(d)     From further diluting the ROYAL OAK WATCH CONFIGURATION TRADEMARKS; and

(e)     From otherwise competing unfairly with Plaintiff in any manner.

2.      That Defendants be required to deliver up to Plaintiff for destruction, any and all goods in their possession or under their control that were or are being advertised, promoted, offered for sale or sold in connection with the ROYAL OAK Trade Dress or the configurations of the ROYAL OAK Registrations, whether alone or in combination with any words or designs, including, but not limited to the ACCUSED WATCHES.

3.      That Defendants be required to deliver up to Plaintiff for destruction, any and all catalogs, circulars and other printed material in their possession or under their control displaying or promoting the goods which were or are being advertising, promoted, offered for sale or sold in connection with the ROYAL OAK Trade Dress or the configurations of the ROYAL OAK Registrations, whether alone or in combination with any words or designs.

4.      That Defendants be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court and serve upon Plaintiff, within thirty (30) days of the entry of the injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with permanent injunction.

5.      That Defendants be required, pursuant to 15 U.S.C. § 1117, to account to Plaintiff for any and all profits derived by it, and for all damages sustained by Plaintiff by reason of Defendants' actions complained of herein, including an award of treble damages as provided for statute.

6.      That Plaintiff be awarded punitive damages.

16

7.     That Plaintiff be awarded both pre-judgment and post-judgment interest on each and every damage award.

8.     That pursuant to 15 U.S.C. § 1117, Plaintiff have and recover from Defendants, Plaintiff's reasonable attorneys' fees, costs and disbursements of this civil action.

9.     That Plaintiff have such other and further relief as the Court may deem just and proper.

Dated: August 13, 2013
New York, New York                     SPRINGUT LAW P.C.


By:_____
         Milton Springut
         Tal S. Benschar
         75 Rockefeller Plaza
         New York, New York 10019
         (212) 813-1600

         *Attorneys for Plaintiffs*
         *Audemars Piguet Holding S.A. and*
         *Audemars Piguet (North America) Inc.*